# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

MOSES MANUEL CHAVARIN,

Plaintiff,

v.

FRANK BISIGNANO Commissioner of Social Security[1]

Defendant.

_____/

Case No.  1:25-cv-810-KES-EGC

**FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PLAINTIFF'S MOTION BE GRANTED AND THE ACTION BE REMANDED TO THE COMMISSIONER FOR FURTHER PROCEEDINGS**

(Doc. 1)

14-DAY DEADLINE

## I.      INTRODUCTION

Plaintiff Moises Manuel Chavarin ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act").  (Doc. 1).  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Erin E. Guy Castillo, United States Magistrate Judge.[2]

For the reasons set forth below, the undersigned recommends that Plaintiff's motion for summary judgment be granted and that the action be remanded to the Commissioner for further

---

[1] On May 7, 2025, Frank Bisignano was named Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html.  He is therefore substituted as the defendant in this action.  *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant.").

[2] The matter is referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and E.D. Cal. Local Rule 302.

proceedings.

## II.    BACKGROUND

Plaintiff was born in 1999. (Administrative Record ("AR") 174). He earned a high school diploma. (AR 52). Plaintiff filed an application for DIB and SSI, alleging he became disabled on December 6, 2007 due to autism. (AR 174, 205). At the hearing, Plaintiff, through his attorney, amended the disability date to October 13, 2020.

**A.    Relevant Evidence of Record[3]**

On August 1, 2023, Dr. L. Faurbo completed a comprehensive clinical psychological evaluation, including a "medical source statement." (AR 816, 820–21.) The medical source statement reflects Dr. Faurbo's opinion that Plaintiff's test results "indicated the potential presence of an intellectual disability." (AR 820). The medical source statement further reflects Dr. Faurbo's opinion that Plaintiff was "moderately impaired" as to his abilities to: (1) "perform[] detailed and complex tasks;" (2) "perform work activities without special or additional supervision;" (3) complete a normal workday or work week without interruptions;" (4) "accept instructions from supervisors;" (5) "interact with co-workers and with the public," and (6) adapt to the "usual stresses and pressures common to a competitive work environment." (AR 821). Dr. Faurbo also opined that Plaintiff was mildly limited in "maintaining regular attendance in the workplace" and in the ability to "perform work activities on a consistent basis." (*Id.*). Dr. Faurbo noted that all of the limitations were "due to deficits stemming from a cognitive disability as well as a possible mood disorder." (*Id.*).

**B.    Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on August 31, 2023, and again on reconsideration on January 22, 2024. (AR 64–87). Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 98). The ALJ conducted a hearing on August 7, 2024. (AR 38–63). Plaintiff appeared at the hearing with his attorney and testified as to his alleged disabling conditions and work history. (AR 46–58).

A Vocational Expert ("VE") also testified at the hearing. (AR 58–61). In relevant part, the

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

VE testified that an individual with the same age, education and work experience as Plaintiff, who had no external limitations but was limited to: carrying out simple instructions and work-related decisions; occasional interactions with coworkers and supervisors but none with the public; and who could not perform work requiring specific production rate or quotas would be able to work as an industrial cleaner, kitchen helper or warehouse worker. (AR 59–60). The VE also testified that the maximum amount of off-task time that would be tolerated would be "up to 10% of the workday" and up to "one [absence] per month." (AR 60–61.)

**C.      The ALJ's Decision**

In a decision dated September 17, 2024, the ALJ found that Plaintiff was not disabled. (AR 14–32). The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 20–30). The ALJ decided that Plaintiff had not engaged in substantial gainful activity since June 16, 2023. (AR 20). At step two, the ALJ found Plaintiff's following impairments to be severe: borderline intellectual functioning, autism disorder and anxiety disorder. (AR 20). The ALJ then determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 20–24).

The ALJ assessed Plaintiff's residual functional capacity (RFC)[4] and applied the assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the following RFC:

> [T]o to perform medium work as defined in 20 CFR 416.967(c) except he has no exertional limitations, but he has the following nonexertional limitations: He can understand, remember, and carry out simple instructions; he can make simple work-related decisions; he can deal with occasional changes in routine work setting; he

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, for five days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

can occasionally interact with coworkers and supervisors; he cannot interact with the public; he cannot perform any work requiring a specific production rate, such as work on an assembly line, or work with hourly production quotas; and he would need a job where he could work independently, meaning he could work in the vicinity of others, but no tandem work or work as part of a team is needed to complete job tasks.

(AR 24; *see also id* 24–30).  Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms," the ALJ rejected Plaintiff's subjective testimony as to "the intensity, persistence and limiting effects of these symptoms" as being "not entirely consistent with the medical evidence and other evidence in the record."  (AR 25).

The ALJ then determined that Plaintiff had no past relevant work experience (step four) but that, given his/her RFC, he/she could perform a significant number of jobs in the national economy (step five).  (AR 30–31).  In making this determination, the ALJ relied on the VE's answers to a series of hypothetical questions the ALJ posed to the VE during the hearing.  (AR 59–61).  The VE testified that a person with the RFC specified above could perform the jobs of: industrial cleaner, kitchen helper, or warehouse worker.  (AR 58–61).  The ALJ ultimately concluded Plaintiff was not disabled at any time after June 16, 2023, the alleged onset date.  (AR 31).

Plaintiff sought review of this decision before the Appeals Council, which denied review on May 2, 2025.  (AR 1–6).  Therefore, the ALJ's decision became the final decision.  20 C.F.R. § 404.981.

### III.   LEGAL STANDARD

**A.   Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if [they are] unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining

4

whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520).  The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments.  If not, the claimant is not disabled.  If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1.  If so, the claimant is automatically presumed disabled.  If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy.  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.    Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences

5

reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.    DISCUSSION

Plaintiff asserts one claim of error: the ALJ erred by formulating an RFC that is not supported by substantial evidence because the ALJ failed to adequately address assessed limitations by a credited medical opinion. (*See* Doc. 18 at 3–19). The Commissioner counters that the ALJ accounted for Plaintiff's moderate limitations and translated credited medical opinions into the assessed RFC. (Doc. 20 at 5–11).

The undersigned agrees with Plaintiff that the assessed RFC is not supported by substantial evidence, as the ALJ did not adequately address whether and how the assessed RFC accounts for credited medical opinion evidence regarding Plaintiff's moderate limitations in adaptive functioning.

## A.    Legal Standard

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the

6

record." *Robbins*, 466 F.3d at 883. "[A]n RFC that fails to take into account a claimant's limitations is defective." *Valentine*, 574 F.3d at 690.

"Where an ALJ accords substantial or great weight to a physician's opinion, he must either incorporate their findings into the RFC or offer an explanation for why he chose not to accept them." *Sahyoun v. Saul*, No. 2:18-CV-576-EFB, 2020 WL 1492661, at *3 (E.D. Cal. Mar. 27, 2020); *see also Martin v. Comm'r of Soc. Sec. Admin.*, 472 F. App'x 580 (9th Cir. 2012) (unpublished) ("The administrative law judge (ALJ) erred when formulating Martin's residual functional capacity (RFC) because the RFC neither incorporated Dr. Steiner's opinion of Martin's work limitations nor gave specific and legitimate reasons for rejecting it."); *Neufeld v. Berryhill*, No. 2:16-cv-03644 (VEB), 2018 WL 4739699, at *6 (C.D. Cal. Sept. 30, 2018) ("Having afforded 'great weight' to the opinions of Dr. Bartell and Dr. Loomis, the ALJ was bound to either incorporate their findings as to Plaintiff's limitations or explain why she decided not to accept them."); *Bain v. Astrue*, 319 F. App'x 543, 545–46 (9th Cir. 2009) (holding ALJ erred in not including consultative examining psychologist's moderate limitations in the RFC, despite specifically crediting these limitations in the opinion); *Flores v. Saul*, No. 1:18-cv-01523-SKO, 2020 WL 509098, at *5 (E.D. Cal. Jan. 31, 2020) (finding ALJ erred by assigning great weight to consultative psychologist's opinion, but failing to provide specific and legitimate reasons for rejecting significant portions of the opinion); *Wascovich v. Saul*, No. 2:18-cv-659-EFB, 2019 WL 4572084, at *3–5 (E.D. Cal. Sept. 20, 2019) (finding ALJ erred by assigning substantial weight to consulting examiner's opinion that the plaintiff had a mild to moderate impairment in her capacity to maintain regular attendance, but failed to account for the limitation in the RFC); *Harrell v. Kijakazi*, No. 1:20-cv-00614-GSA, 2021 WL 4429416, at *4 (E.D. Cal. Sept. 27, 2021) ("The ALJ was under no obligation to accept a medical opinion he found unsupported by the record. But, having clearly stated that he was according [the physician]'s opinion great weight, the ALJ was under an obligation to account for the moderate limitations [the physician] identified irrespective of the broader reasoning in support of the RFC."). An ALJ errs when they do not explain why they did not adopt all findings or limitations from a persuasive opinion. *Patterson v. Comm'r of Social Sec.*, No. 2:23-cv-00635 AC, 2024 WL 4216810, at *8 (E.D. Cal. Sept. 17, 2024).

In examining whether RFC limitations account for some opined non-exertional limitations, courts in this circuit have split on whether RFC limitations to simple / routine tasks with limited public contact account for all moderate non-exertional limitations. *Macias v. Saul*, No. 1:19-cv-01187-BAM, 2021 WL 856423, at *6 (E.D. Cal. Mar. 8, 2021) (collecting cases and noting that "Courts have rejected the argument that a similar limitation to simple tasks in the RFC adequately accounts for moderate limitations in the ability to maintain regular attendance or complete a normal workday."). Courts within this district have noted that the district court case law "tends to favor the view that a restriction to simple/routine tasks with limited public contact does not account for the moderate limitations . . . identified in interacting with supervisors and peers, handling work related stressors, maintaining regular attendance, and completing a normal workweek without interruption." *Harrell*, 2021 WL 4429416, at *6; *Lamar v. Comm'r of Soc. Sec.*, No. 1:24-cv-00504-EPG, 2025 WL 318294, at *4 (E.D. Cal. Jan. 28, 2025) (noting split and finding that limitations in RFC did not account for all moderate limitations opined by physician); *Berenisia Madrigal v. Saul*, No. 1:18-cv-01129-SKO, 2020 WL 58289, at *5–6 (E.D. Cal. Jan. 6, 2020) (finding that ALJ's RFC of simple, routine tasks with limited peer and public contact did not account for opined limitations in "completing a normal workday or work week due to her psychiatric condition, moderate difficulties dealing with stress and changes encountered in the workplace, and an up to moderate likelihood that she would emotionally deteriorate in a work environment").

With these legal standards in mind, the undersigned reviews the weight given to Dr. Faurbo's opinions.

**B.      Analysis**

In a medical source statement from an August 1, 2023 report, Dr. Faurbo noted that Plaintiff was not significantly limited in performing simple and repetitive tasks, (AR 820), but found moderate limitations in his ability to perform detailed and complex tasks and in performing work activities without special or additional supervision. Dr. Faurbo also noted that Plaintiff had moderate limitations in the ability to complete a normal workday or workweek without interruptions and in the ability to interact with coworkers and the public. Moderate limitations were further noted in

Plaintiff's ability to accept instructions from supervisors and to deal with the usual stresses encountered in a competitive work environment.  Dr. Faurbo found that the limitations were "due to deficits stemming from a cognitive disability as well as a possible mood disorder."  (AR 820–21.) Dr. Faurbo found mild limitations in maintaining regular attendance in the workplace and the ability to perform work activities on a consistent basis.

In evaluating the opinion of Dr. Faurbo, the ALJ reasoned as follows:

> Consultative examiner L. Faurbo, Psy.D., opined that in performing detailed and complex tasks, working without special or additional supervision, completing a normal workday or workweek without interruption, accepting instructions from supervisors, interacting with the public, and dealing with the usual stresses encountered in competitive work environments. (Id.). The opinion of Dr. Faurbo is consistent with the objective record . . . Additionally, such statements are supported by the findings and conclusions of Dr. Faurbo following in-person evaluation, as well as narrative explaining the findings as well as by exam observations, and consistent with treatment record and varied activities.  Nonetheless, the undersigned finds the opinion of Dr. Faurbo is only mostly persuasive because the evidence supports that claimant also has additional limitations which the undersigned has set forth in the residual functional capacity above.

(AR 29).  Based in part on that opinion, the ALJ determined that Plaintiff retained the "residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) with the following limitations:

> [Plaintiff] can understand, remember, and carry out simple instructions; he can make simple work-related decisions; he can deal with occasional changes in routine work setting; he can occasionally interact with coworkers and supervisors; but he cannot interact with the public; he cannot perform any work requiring a specific production rate, such as work on an assembly line, or work with hourly production quotas; and he would need a job where he could work independently, meaning he could work in the vicinity of others, but no tandem work or work as part of a team is needed to complete job tasks.

(AR 24).

The question presently before the Court "is whether the ALJ, having accepted [Dr. Faurbo's] opinion, appropriately translated the moderate limitations from that opinion into concrete restrictions in the RFC."  *Harrell*, 2021 WL 4429416, at *6–7; *see also id.* ("But, having clearly stated that he was according Dr. Stafford's opinion great weight, the ALJ was under an obligation to account for the moderate limitations Dr. Stafford identified irrespective of the broader reasoning in support of the RFC.").  In answering this question, the undersigned is mindful that an ALJ's RFC findings need only be consistent with assessed limitations and not identical to them.  *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222–23 (9th Cir. 2010); *Wascovich*, 2019 WL 4572084, at *5 ("This does not

9

necessarily mean that the ALJ was required to explicitly transcribe the limitation in the RFC. Rather, he is required to account for it in his 'translation.'"); *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."); *Ashlock v. Kijakazi*, No. 1:21-cv-01687-GSA, 2022 WL 2307594, at *3 (E.D. Cal. June 27, 2022) ("The RFC need not mirror a particular opinion; it is an assessment formulated by the ALJ based on all relevant evidence.").

Here, the undersigned finds that the RFC did not completely address or account for the opined limitations in Dr. Faurbo's opinion, despite the ALJ's finding that "the evidence supports that claimant also has additional limitations." (AR 30).

As an initial matter, the undersigned finds that the ALJ's limitations to simple instructions and occasional contact with coworkers and supervisors, and contact with the public, and only occasional changes in routine work setting, adequately addressed Dr. Faurbo's opinion that Plaintiff had a moderately limited ability to understand complex instructions and was moderately limited as to his ability to tolerate social interaction. (AR 24).

But Dr. Faurbo also noted moderate limitations as to Plaintiff's ability to: "adapt to the usual stresses common to a competitive work environment," "complet[e] a normal workday or workweek without interruption," and "perform work activities without special or additional supervision." (AR 821). And those limitations were not "translated" into the ALJ's assessed RFC. *Wascovich*, 2019 WL 4572084, at *5. After crediting Dr. Faurbo's medical source statement, the ALJ needed to address either (1) how the ALJ translated Dr. Faurbo's remaining limitations as to Plaintiff's ability to adapt to the usual stresses and pressures common to a competitive work environment including his ability to complete a normal workday or workweek, or to perform work activities without special or additional supervision in a work setting into the RFC, or (2) why the ALJ did not translate those limitations into the RFC. *See Stubbs*, 539 F.3d at 1174. Absent an explanation for failing to account for these limitations, the ALJ's RFC determination is not supported by substantial evidence. *See Sahyoun*, 2020 WL 1492661, at *3; *Robbins*, 466 F.3d at 886 ("an ALJ is not free to disregard properly supported limitations"); *Byrd v. Colvin*, 2017 WL 980559, at *8 (D. Or. Mar. 14, 2017) ("Here, the ALJ gave great weight to [the] opinion, but the RFC failed to take into account all of the

10

limitations identified by [the doctor], and the ALJ failed to explain why she did not include the limitations in the RFC. As a result, the ALJ erred in formulating the RFC.").

Defendant maintains that the RFC adequately accounted for all of Plaintiff's moderate mental limitation limitations because "[a]lthough the ALJ did not include Dr. Faurbo's limitations in the RFC verbatim, the RFC finding accounted for the limitations." (Doc 20 at 6). However, in formulating an RFC, the ALJ must account for *all* of a claimant's medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a)(1); *Valentine*, 574 F.3d 690 (an RFC that "fails to take into account a claimant's limitations is defective"). Therefore, an ALJ errs when, as here, an ALJ provides an incomplete RFC ignoring "significant and probative evidence." *Hill v. Astrue*, 698 F.3d 1153, 1161–62 (9th Cir. 2012).

Here, the ALJ generally credited Dr. Faurbo's opinion and incorporated other moderate limitations into the assessed RFC. However, the ALJ did not address Dr. Faurbo's opinion as to Plaintiff's moderate limitations as they related to Plaintiff's ability to "adapt to the usual stresses and pressures common to a competitive work environment including completing a normal workday or workweek" or "accept instructions from supervisors" by either translating these opined limitations into the RFC or explaining why the ALJ declined to credit Dr. Faurbo's opinion as to these limitations. (AR 821); *see also Macquarrie v. Comm'r of Soc. Sec.*, No. 1:21-CV-00072-CDB, 2023 WL 8242069, at *7 (E.D. Cal. Nov. 28, 2023).

Defendant cites a Ninth Circuit case, *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008), to support the proposition that an RFC limited to simple work "accommodates a variety of moderate findings, including . . . moderate limitations in handling workplaces stressors." (Doc. 20 at 6–7). However, that case is distinguishable from the instant matter.

In *Stubbs-Danielson v. Astrue*, the Ninth Circuit noted that an "ALJ's RFC finding properly incorporated the limitations . . . related to pace and the other mental limitations regarding attention, concentration, and adaption." *Id.* at 1174. However, courts have frequently distinguished *Stubbs-Danielson* as inapplicable to cases with opined limitations beyond concentration, persistence, or pace. *Macias*, 2021 WL 856423, at *6 (distinguishing *Stubbs-Danielson* as "the moderate

11

restrictions at issue here involve limitations in maintaining attendance and completing a normal workday, not limitations in concentration, persistence or pace"); *Harrell*, 2021 WL 4429416, at *6 (finding that *Stubbs-Danielson* did not "specifically address the extent to which a limitation to simple and routine tasks appropriately accounts for the limitations identified"); *Warren v. Saul*, No. 8:19-CV-02270-PD, 2021 WL 259435, at *5 (C.D. Cal. Jan. 26, 2021) (finding case factually distinguishable from *Stubbs-Danielson* where assessment that Plaintiff could perform work involving simple, repetitive tasks requiring only simple work-related decisions and involving only occasional changes in a routine work setting, with unlimited contact and interaction with supervisors as necessary to receive work-related instructions but otherwise only occasional interaction with coworkers, failed to address the moderate limitations found by physician in plaintiff's ability to maintain regular attendance, interact with a supervisor, or complete an eight-hour workday in a regular workplace); *Sahyoun*, 2020 WL 1492661, at *4 (noting factual distinction from *Stubbs-Danielson* where physician did not opine that plaintiff could sustain work involving simple, repetitive tasks despite his moderate limitations in maintaining regular attendance, completing a normal workday or work). As in those cases, here Dr. Faurbo opined other moderate limitations beyond concentration, persistence, or pace. (*See* AR 820–21). *Stubbs-Danielson* therefore does not exempt the ALJ from the requirement that the ALJ account for Dr. Faurbo's credited opinion as to several limitations.

Defendant also cites district court cases within this circuit, contending that Dr. Faurbo's opined limitations are accounted for within the ALJ's assessed RFC. (Doc. 20 at 7–8). But most of the case law cited is over five years old, and, as discussed above, more recent caselaw "tends to favor the view that a restriction to simple/routine tasks with limited public contact does not account for the moderate limitations . . . identified in interacting with supervisors and peers, handling work related stressors, maintaining regular attendance, and completing a normal workweek without interruption." *Harrell*, 2021 WL 4429416, at *6; *Lamar*, 2025 WL 318294, at *4; *Berenisia Madrigal*, 2020 WL 58289, at *5–6. Further, some of the cases Defendant cited do not discuss the issue of limitations beyond concentration, persistence, or pace. *See, e.g.*, *Hairston v. Saul*, 827 F. App'x 772, 773 (9th Cir. 2020) (unpublished); *Colton T. P. v. Kijakazi*, No.

422CV00254AKBCWD, 2023 WL 5843786, at *2 (D. Idaho Sept. 11, 2023).  Defendant's cited caselaw therefore does not demonstrate that all of Dr. Faurbo's opined limitations were accounted for within the RFC.

Accordingly, the undersigned finds that the ALJ's RFC determination is not supported by substantial evidence.

**C.     Harmlessness Review**

The undersigned must now consider whether the ALJ's error was harmless.  *Molina*, 674 F.3d at 1115.  Courts look to the record as a whole to determine whether the error alters the outcome of the case.  *Id.*; *March v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015).  An error is harmless "where it is inconsequential to the ultimate nondisability determination."  *Molina*, 674 F.3d at 1115 (citations omitted) (first quoting *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998), and then quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).

The undersigned cannot conclude that the error is harmless as it is not clear whether inclusion of the other moderate limitations as opined by Dr. Faurbo would have eliminated available jobs.[5] Moderate limitations are not *per se* disabling, but they may translate into more concrete work restrictions.  *See Macquarrie*, 2023 WL 8242069, at *7.  For example, the VE testified that one absence or early departure per month would be tolerated by employers for unskilled work.  (AR 61 (VE testifying that the "number of absences or days leaving early in a month that would be tolerated for unskilled work" would be "up to one per month")).  Had the ALJ included different limitations in the RFC based upon a proper review of the evidence, the ultimate disability determination may have been different.

Because the undersigned cannot find that the error was "inconsequential to the ultimate nondisability determination," the undersigned recommends that this matter be remanded to the Commissioner for further administrative proceedings.  *Molina*, 674 F.3d at 1115.

**D.     Remand**

In a case where the ALJ's determination is not supported by substantial evidence or is tainted

---

[5] This is not to say that the disability determination will or should be different regarding the period at issue--only that the undersigned cannot determine the outcome would remain the same upon a correct evaluation of the record.

by legal error, the court may remand the matter for additional proceedings or an immediate award of benefits.  Remand for additional proceedings is proper where (1) outstanding issues must be resolved, and (2) it is not clear from the record before the court that a claimant is disabled.  *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

Here, the undersigned finds that remand for further proceedings is warranted.  *See, e.g.*, *Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 1991) (affirming a remand for further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (remanding the case "for further findings evaluating the credibility of [the claimant's] subjective complaints").  On remand, the Commissioner shall either incorporate all of the limitations assessed by Dr. Faurbo in the assessed RFC or explain why any such limitation is not incorporated into the assessed RFC.

### V.    CONCLUSION AND ORDER

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1.    Plaintiff's motion for summary judgment, (Doc. 18), be GRANTED;

2.    This matter be REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and

3.    The Clerk of the Court be DIRECTED to enter judgment in favor of Plaintiff Moses Manuel Chavarin and against Defendant Frank Bisignano, Commissioner of Social Security, and to CLOSE this action.

These findings and recommendations are submitted to the District Judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen (14) days** of service of these recommendations, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

The District Judge will review the Magistrate Judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 17, 2026**

UNITED STATES MAGISTRATE JUDGE